## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

STEVEN C. SMITH, as Conservator :
for B.J., a minor child, :

  Plaintiff, :

vs. :  CA 15-00371-CG-C

TRAVIS TURNER, *et al.*, :

  Defendants. :

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen. L.R. 72(a)(2)(S), on Defendants Sam Cochran's, Sheriff of Mobile County, and Noah Price "Trey" Oliver, III's, the Warden of the Mobile County Metro Jail, Motion to Dismiss Plaintiff's Fourth Amended Complaint ("motion to dismiss"), (Doc. 138), filed on April 14, 2017, and brief in support, (Doc. 139), and Defendant Mobile County Commission's ("MCC") Motion to Dismiss Plaintiff's Fourth Amended Complaint and Motion to Strike Punitive Damages ("motion to dismiss" and "motion to strike"), (Doc. 141), filed on April 17, 2017, and brief in support, (Doc. 142). Upon consideration of the foregoing pleadings and those arguments made during oral argument held before the undersigned on May 25, 2017, it is **RECOMMENDED** that the Court:

1.  **GRANT** Defendants Cochran's and Oliver's motion to dismiss, (Doc. 138), and **DISMISS** Counts XI and XII of Plaintiff Smith's fourth amended complaint, (Doc. 134), that are brought against Defendants Cochran and Oliver;

2.  **GRANT IN PART AND DENY IN PART** Defendant MCC's motion to dismiss, (Doc. 141), and **DISMISS** Counts XIII and XIV of Plaintiff Smith's fourth amended complaint, (Doc. 134), and **DENY** Defendant MCC's motion to dismiss as to Plaintiff's Smith's claims of deliberate indifference to serious medical needs, found in Count XI of Plaintiff Smith's fourth amended complaint, (Doc. 134); and

3.  **GRANT** Defendant MCC's motion to strike, (Doc. 141), and **STRIKE** Plaintiff Smith's demand for punitive damages.

## FACTUAL BACKGROUND

In March 2003, the United States Department of Justice (the "DOJ"), notified the Mobile County Sheriff's Office (the "MCSO") and Defendant MCC of its intent to investigate the Mobile County Metro Jail (the "MCMJ") pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997, an investigation that continues to the present. (Doc. 134, ¶ 28-29). The DOJ notified the MCC, by a "Findings Letter," dated January 15, 2009, that certain conditions at the MCMJ were constitutionally inadequate including medical care, specifically in regard to acute care, chronic care, infectious diseases, intake and initial assessment, general access to medical care, and staffing; mental health care, specifically in regard to

2

intake and initial assessment, access to mental health care, assessment, diagnosis, and treatment, suicide prevention, policies and procedures, and staffing; use of restraints, specifically in regard to monitoring of restrained individuals and application of restraints; security, supervision, and protection from harm, specifically in regard to control of contraband, classification of inmates, supervision, and policies, procedures, training, and staffing; safety and sanitation, specifically in regard to insect and rodent infestation, physical plant, fire safety, and general sanitation and safety. (Doc. 134-1, at 1-38). A follow up to the Findings Letter, dated May 29, 2009, indicated the DOJ had not received a response to the Findings Letter and requested engagement. (Doc. 134-1, at 44-46).

A letter, dated October 18, 2012, notified the MCC of the DOJ's assessment of the conditions at the MCMJ from an inspection that occurred between January 17, 2012, and January 20, 2012. (Doc. 134, at 47-69). This letter addressed jail practices that remained constitutionally substandard including protection from assaults, specifically in regard to deficient classification and housing assignments, overcrowding, and deficient use of force monitoring by video; mental health care, specifically in regard to improper use of restraints on inmates with mental illness, improper placement decisions for inmates with mental illness, absence of clear procedures for transitioning inmates with mental illness to less restrictive settings, inadequate training for security staff, excessive reliance on a "Buddy System", problems relating to supervision of suicidal inmates, failure to clearly define terms in policies relating to mental health care, and overcrowding; medical care,

specifically in regard to improvements to the electronic medical record system and improvements to the quality assurance and internal management system. (Doc. 134-1, at 48-53). Enclosed with this letter was a proposed settlement agreement. (Doc. 134-1, at 55-69). A letter, dated July 15, 2013, from the MCC to the DOJ was an initial response by the MCC to the DOJ's October 18, 2012, letter. (Doc. 134-1, at 70-79).

On May 4, 2015, Brandon Jeffries, who, at the time, was eighteen-years-old and a minor,[1] lived at a residential home, was arrested and charged with assault in the third degree, a misdemeanor, and held at the MCMJ as a pre-trial detainee. (Doc. 134, ¶¶ 73-74). On June 11, 2015, a few minutes after 3:00 p.m., Jeffries was engaged in a physical altercation in the 405 Unit of the MCMJ with Defendants Travis Turner, Joseph Bell, James Bonner, Kevin Nelson, Tony Davis, Jr., Bridgette Goode, Earnest Goode, Jr., Kieyun Washington, and Walter Anderson, during which Jeffries fell to the ground. (Doc. 134, ¶¶ 80 & 89). At a point in time during the physical altercation, Turner held Jeffries's head on Turner's abdomen while Jeffries's arms were held behind Jeffries's head, and, at another time, a Taser was used on Jeffries one or more times by Turner. (Doc. 134, ¶¶ 89-90).

Goode, the shift commander at the time of the physical altercation, reported the physical altercation with Jeffries to Christina Russo, the mental health director for Naphcare U.S., Inc.'s ("Naphcare"), MCMJ medical unit, and Sheila Caulton, a

---

[1] "Any person in [Alabama], at the arrival at the age of 19 years, shall be relieved of his or her disabilities of minority and thereafter have the same legal rights and abilities as persons over 21 years of age. No law of this state shall discriminate for or against any person between and including the ages of 19 and 21 years solely on the basis of age." ALA. CODE § 26-1-1.

licensed nurse employed with Naphcare. (Doc. 134, ¶ 98). Naphcare, a private medical company, contracted to provide medical care and mental healthcare to inmates at the MCMJ. (Doc. 134, ¶ 49).

After the physical altercation, Jeffries was placed in restraints of his hands and legs by one or more of the COs, drug by multiple COs for approximately forty (40) yards, and then placed in a wheelchair. (Doc. 134, ¶ 95). Jeffries was pushed in the wheelchair to the 1005 Suicide Unit, his restraints were removed, he was placed on the Unit's floor, and then he was told by Turner to walk into his new cell, to which request Jeffries responded he was unable. (Doc. 134, ¶ 103). Turner, then, used a Taser on Jeffries, after which Jeffries was stripped naked and placed in a smock. (Doc. 134, ¶¶ 103 & 108). Jeffries was left on the floor of cell number 1023. (Doc. 134, ¶ 108). Jeffries reported to Joshua Wilson, a floor officer in the 1005 Suicide Unit, he could not feel his legs and his shoulders were burning. (Doc. 134, ¶ 109). Wilson reported Jeffries's complaints to Ira Kennington, the pod officer for the 1005 Suicide Unit, who twice attempted to call the medical clinic without a response. (Doc. 134, ¶ 110).

At approximately 4:30 p.m. that day, Caulton entered the 1005 Suicide Unit to perform blood glucose checks. (Doc. 134, ¶ 114). When Caulton entered the 1005 Suicide Unit, Kennington reported to Caulton Jeffries could not feel his legs, and Wilson reported to Caulton the same information and Jeffries had burning in his shoulders. (Doc. 134, ¶ 115). After speaking with Kennington and Wilson, Caulton, accompanied by Wilson, visited Jeffries in cell 1023, where he remained on the floor.

(Doc. 134, ¶¶ 118 & 120).  After Caulton examined Jeffries, she noted, at 5:13:49 p.m. of that day, Jeffries had no history of trauma; she did indicate Jeffries suffered from a backache; no tingling of extremities; location-right shoulder, left shoulder; pain rating of five (5) out of ten (10); sharp pain; no back pain; no foot drop/weakness/numbness in leg; and no sign of distress.  (Doc. 134, ¶ 123).  Caulton recommended Jeffries be given ibuprofen, which he was not administered.  (Doc. 134, ¶¶ 125, 131, & 133).

Lester Pittman, a floor officer in the 1005 Suicide Unit, worked from 7:00 a.m. to 7:00 p.m. on June 11, 2015.  Georganna Blakes, an employee of Naphcare; Will Fernandez and Thomas Wesley, floor officers in the 1005 Suicide Unit; and Dewana Deloach, the pod officer in the 1005 Suicide Unit, worked the night shift from 7:00 p.m. on June 11, 2015, to 7:00 a.m. on June 12, 2015.  (Doc. 134, ¶¶ 131-32).  During Blakes's shift, she conducted two pill passes in the 1005 Suicide Unit; did not present the recommended ibuprofen to Jeffries; did not assess, evaluate, or treat Jeffries; and did not seek additional treatment for Jeffries.  (Doc. 134, ¶¶ 133-34).  Floor officers did not enter information about Jeffries, from fifteen-minute interval checks of the 1005 Suicide Unit, in the PIPE wallet data collector system.  (Doc. 134, ¶ 136).

On June 12, 2015, at approximately 11:14 a.m. emergency medical personnel were summoned to the MCMJ, and Jeffries reported to them he could not feel or move his lower body.  (Doc. 134, ¶¶ 142-143).  Jeffries was, then, transported to a

local hospital for emergency medical treatment, where he was diagnosed with paralysis with limited upper body movement.  (Doc. 134, ¶ 144).

## PROCEDURAL BACKGROUND

On July 27, 2015, Plaintiff Steven C. Smith, as conservator for B.J., a minor child,[2] filed a complaint with this Court.  (Doc. 1).  Plaintiff Smith filed a First Amended Complaint, (Doc. 8), on August 20, 2015.  The Court entered a Rule 16(b) Scheduling Order, (Doc. 16), on October 8, 2015, and set the deadline for the parties to amend their pleadings to March 1, 2016, the date on which Plaintiff Smith filed a Motion for Leave of Court to Amend Complaint and Add Party Defendants ("first motion to amend"), (Doc. 40), requesting that he be able to file a seconded amended complaint to amend factual allegations and other matters and file a third amended complaint to add the MCC as a party defendant.  Attached to the first motion to amend was Plaintiff Smith's second amended complaint, (Doc. 40-2), and third amended complaint, (Doc. 40-3).  Plaintiff averred in his first motion to amend that he submitted a verified statement of claim to the MCC that initiated a ninety day process, required by Alabama law for Plaintiff to add the MCC as a party defendant, which had not ended as of the filing of the first motion to amend.  (Doc. 40).

The Court granted in part, (Doc. 42), Plaintiff's first motion to amend, which allowed Plaintiff Smith to file his second amended complaint, (Doc. 43), and file a motion for leave to file a third amended complaint to add the MCC as a party defendant no later than June 9, 2016, (Doc. 42), after the ninety day statement of claim period.  Plaintiff Smith filed his Motion for Leave of Court to Amend

---

[2] Jeffries has since attained the age of majority.  *Supra* note 1, at 4.

Complaint and Add Party Defendant ("second motion to amend"), (Doc. 67), on June 8, 2016. The third amended complaint attached to the second motion to amend, (Doc. 67-1), however, was appreciably different from the third amended complaint attached to the first motion to amend, (Doc. 40-3), and the Court denied Plaintiff Smith's second motion to amend with leave for Plaintiff Smith to file his third amended complaint, which was attached to his first motion to amend, (Doc. 73, at 5).

Plaintiff Smith's third amended complaint was entered on August 24, 2016, which added the MCC as a party defendant. (Doc. 74). Defendants Cochran and Oliver filed their Motion to Dismiss Plaintiff's Third Amended Complaint, (Doc. 79), and brief in support, (Doc. 78), on September 7, 2017, and on October 28, 2016, Defendant MCC filed its Motion to Dismiss Plaintiff's Third Amended Complaint and Motion to Strike Punitive Damages, (Doc. 88). On March 21, 2017, Plaintiff Smith filed his Motion for Leave to Amend, (Doc. 127), which was unopposed, (*see* Docket Sheet), and granted on March 30, 2017, (Doc. 131). Plaintiff Smith's Fourth Amended Complaint was entered on March 31, 2017. (Doc. 134).

In Plaintiff Smith's fourth amended complaint, he bring claims against Travis Turner, Kevin Nelson, Tony Davis, Jr., Bridgette Goode, Joseph Bell, Earnest Good, Jr., James Bonner, Kieyun Washington, Ira Kennington, Walter Anderson, Joshua Wilson, Melanie Thompson, Thomas Wesley, Dewanna Deloach, Will Fernandez, and Lester Pittman, who were MCMJ COs on or about June 11-12, 2015, in their individual capacities; Naphcare U.S., Inc., doing business as

Naphcare, Inc. ("Naphcare"); Sheila Caulton and Georganna Blakes as agents and/or employee of Naphcare, in their individual capacities; David Crawford, as the Health Services Administrator for Naphcare, in his individual capacity; George Wilson, M.D., as the Medical Director for inmates at the MCMJ; the MCC; Sam Cochran, the Sheriff of Mobile County, Alabama, in his individual capacity; and Noah Price "Trey" Oliver III, Warden of the MCMJ, in his individual capacity.  (Doc. 134, ¶¶ 2-25).

At the outset, the Court notes Plaintiff Smith's fourth amended complaint is a quintessential "shotgun" pleading.  "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002); *see also Anderson v. Dist. Bd. of Trs. of Cent. Fl. Comty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) ("[Plaintiff's] complaint is a perfect example of 'shotgun' pleading in that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.").  "Consequently, in ruling on the sufficiency of a claim, the trial court must sift out the irrelevancies, a tasks that can be quite onerous." *Strategic Income Fund, L.L.C.*, 305 F.3d at 1295 (footnoted omitted).

From what the Court is able to determine, Count XI incorporates the previous 228 paragraphs of the fourth amended complaint, including all previous counts, and is brought against Defendants Cochran and Oliver and Defendant MCC

9

pursuant to 42 U.S.C. § 1983 and alleges they were deliberately indifferent to the serious medical needs of Jeffries, thus violating his Fourteenth Amendment rights.[3] (Doc. 134, ¶¶ 229-32). Specifically, the allegations presented against Defendants Cochran and Oliver is as follows:

> 230. Defendants Cochran, Wilson, Crawford and/or Oliver are supervisory officials for the MCMJ and were responsible for development and implementation of policies and procedures for the jail and were responsible for development and implementation of policies and procedures for medical care at the jail and by action and inaction and, while acting under color, custom or usage of state law within the meaning of 42 U.S.C. § 1983, with deliberate indifference to the constitutional rights of MCMJ [inmates] such as [Jeffries], established the unconstitutional customs and policies described above. These defendants did thereby deprive [Jeffries] of his rights as a pretrial detainee under the Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

> 231. Defendant[ ] Cochran . . . [is] also liable for the acts [of] [Naphcare] and its policymakers, including Wilson and Crawford, as . . . Cochran delegated [his] final decision making authority to them.

> 232. As a result of the wrongful conduct of the defendants, Brandon was caused to suffer permanent and debilitating injuries and other damages.

(Doc. 134, ¶¶ 229-32).

Count XI incorporates the previous 232 paragraphs of the fourth amended complaint, including all previous counts, and is brought against Defendants

---

[3] The claims against Defendants Cochran and Oliver are governed by the Fourteenth Amendment since Jeffries was a pretrial detainee in custody at the time of the relevant events. *See Cagle v. Sutherland*, 334 F.3d 980, 985 (11th Cir. 2003) (per curiam) ("Because [the plaintiff] was a pretrial detainee, his section 1983 claims are based on the due process clause of the Fourteenth Amendment."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.").

Cochran and Oliver pursuant to 42 U.S.C. § 1983, and alleges they were deliberately indifferent to a substantial risk of harm to Jeffries, in violation of his Fourteenth Amendment rights.  (Doc. 134, ¶¶ 233-37).  Specifically, Plaintiff Smith alleges:

235.  Defendants Cochran and/or Oliver, acting under color, custom or usage of state law within the meaning of 42 U.S.C. § 1983, with deliberate indifference to the constitutional rights of MCMJ inmates, including [ ] Jeffries, have allowed for the creation of an atmosphere of tolerance of willful, or wanton or reckless and/or improper behavior of [COs] by failing to properly train, staff, implement appropriate training, implement proper policies and/or procedures, hire and/or supervise [MCMJ COs] which has led to a pervasive misuse of excessive use force and deliberate indifference to the serious medical needs of inmates.

236.  On June 11, 2015 and June 12, 2015, the systematic deficiencies of the [MCMJ] were so widespread as to be pervasive.   These systematic deficiencies are addressed above but also include:

a.    Failing to implement proper policies procedures and practices regarding use of force that appropriately guide and monitor the actions of [MCMJ COs]; and/or
b.    Failing to properly train [MCMJ COs] with respect to the appropriate use of force; and/or
c.    Failing to provide and/or maintain proper video surveillance within the [MCMJ]; and/or
d.    Failing to properly staff the [MCMJ]; and/or
e.    Failing to provide adequate training to [COs] with respect to the use of restraints; and/or
f.    Failing to alleviate the overcrowding of the jail despite inmate housing at unsafe and dangerous levels for many years prior to June 11, 2015;
g.    Failing to properly update MCMJ policies and/or procedures, including, but not limited to the MCMJ procedure for the Use of Force and Use of Restraints on inmates;
h.    Failure to implement clear MCMJ policy or procedure requiring inmates receive medical care following instance of use of force being applied upon inmate[;]

i.    Failure to implement clear MCMJ policy or procedure requiring inmates receive medical care following instance of an inmate being tased[;]

k.    Allowing for correctional officers to determine whether an inmate is malingering prior to contacting medical personnel[;]

l.    Allowing for the buddy system to continue;

m.    Failing to take all actions recommended by the DOJ to prevent or deter instances of excessive use of force by MCMJ staff upon MCMJ inmates;

n.    Promoting the unlawful use of excessive force by correctional officers by ignoring written policy requiring video recording of pre-planned use of force; by allowing tasers to be utilized knowing use data would[ not] or could[ not] be tracked and imposing minimal discipline in cases of use of excess force;

o.    Failing to train [COs] with respect to the necessary reactions or recognition of spinal cord injuries and/or paralysis suffered by inmates.

237.    As set forth herein, Defendants Sam Cochran and/or Oliver did, with deliberate indifference to the safety and constitutional rights of Brandon Jeffries and other MCMJ inmates, deprive Brandon of his rights guaranteed to him under the Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.  As a result, Brandon was caused to suffer permanent and debilitating injuries and other damages.

(Doc. 134, ¶¶ 233-37).

Count XII incorporates the previous 237 paragraphs of the fourth amended complaint, including all previous counts, and is brought against Defendant MCC pursuant to 42 U.S.C. § 1983, and alleges it was deliberately indifferent to a substantial risk of harm to Jeffries, in violation of his Fourteenth Amendment rights.  (Doc. 134, ¶¶ 238-242).  Specifically, Plaintiff Smith alleges:

239.    Defendant [MCC], acting under color, custom or usage of state law within the meaning of 42 U.S.C. § 1983, with deliberate indifference to the constitutional rights of MCMJ inmates, has allowed for the creation of an atmosphere of tolerate of willful, or wanton or reckless and/or improper behavior of [COs] by failing to provide for proper training, staffing, implementation of appropriate training practices, implementation of proper policies and/or procedures, failing

to properly maintain and install adequate video surveillance in the MCMJ, hiring and/or supervision of [MCMJ COs] and/or failing to properly fund and/or maintain the MCMJ.  Said failures have led to a pervasive misuse of excessive use force and deliberate indifference to the medical needs and safety of inmates of the MCMJ.

240.  On June 11, 2015 and June 12, 2015, the systematic deficiencies of the [MCMJ] were so widespread as to be pervasive.

241.  The [MCC], with knowledge or constructive knowledge of substantial or excessive risks to inmates' health and/or safety, and with deliberate indifference to those risks and the constitutional rights of the MCMJ inmates, has failed and/or refused to provide appropriate funding and resources in order to provide for the following:

    a.     Adequate staffing of the [MCMJ]; and/or

    b.     Proper training of [MCMJ COs]; and/or

    c.     Adequate [MCMJ] video surveillance system, specifically in the 405 unit and the 1005 unit; and/or

    d.     Proper maintenance of [MCMJ] video surveillance system; and/or

    e.     Proper supervision of [COs]; and/or

    f.     Proper implementation of MCMJ policies and procedures; and/or

    g.     Proper training for [COs] for recognition and reaction to inmate medical needs for inmates with spinal cord injuries and other serious acute medical issues; and/or

    h.     Prevention and/or alleviation of the overcrowding of the [MCMJ]; and/or

    i.     Adequate size or renovations of the [MCMJ] despite many years of excessive and unsafe inmate population levels; and/or

    j.     Adequate number of inmate patient beds in the MCMJ medical clinic; and/or

    k.     Proper training of [COs] for the use of restraints and use of force; and/or

    l.     Adequate access to inmates house in the 1005 Suicide Unit for medical and mental health personnel working within the MCMJ; and/or

    m.     Adequate funding for the MCMJ to adequately provide for the medical needs, mental health needs of inmates and for a safe environment for the inmates of the [MCMJ]; and/or

    n.     Adequate and timely updating of MCMJ polic[i]es and/or procedures, including, but not limited to the MCMJ procedure for the Use of Force and Use of Restraints on inmates; and/or

o.    Adequate funding for the MCMJ to assist in properly providing for the medical needs, mental health needs and concerns and for a safe environment for MCMJ inmates[;]

p.    Failed to mandate or require a clear policy or procedures requiring inmates receive medical care after being subject to use of force or being tased[;]

q.    Allowed for MCMJ [COs] to assess whether an inmate is malingering prior to contacting medical personnel when an inmate reports a medical concern to a MCMJ correctional office or other personnel[;]

r.    Intentionally refused to adequately fund medical care with deliberate indifference to the serious medical needs of inmates such as [Jeffries], had a policy of not adequately funding inmate medical care, and did thereby contribute to cause [Jeffries's] injuries and the individual defendants' denial of necessary medical treatment for [Jeffries's] serious medical needs[;]

s.    That the foregoing were the custom of and/or practice of the [MCC].

Count XIV incorporates the previous 242 paragraphs of the fourth amended complaint, including all previous counts, and is brought against Defendant MCC for negligence and wantonness pursuant to Alabama state law.  (Doc. 134, ¶¶ 243-47). Specifically, Plaintiff Smith alleges:

244.    Prior to and on June 11, 2015, Defendant [MCC] owned and maintained the [MCMJ].

245.    Prior to and on June 11, 2015, Defendant [MCC], negligent and/or wantonly performed the following acts or omissions:

a.    Failed to provide appropriate funding to adequately staff the [MCMJ]; and/or

b.    Failed to provide appropriate funding to ensure adequate training of [MCMJ COs]; and/or

c.    Failed to provide a proper [MCMJ] video surveillance system, specifically in the 405 unit and the 1005 unit of jail; and/or

d.    Failed to provide proper maintenance of the [MCMJ] video surveillance system; and/or

     e.     Failed to provide appropriate funding for the appropriate supervision of [COs]; and/or

     f.     Failed to provide appropriate funding to ensure the proper implementation of MCMJ policies and procedures; and/or

     g.     Failed to provide training and/or the funding necessary for such training for [COs] for recognition and reaction to inmate medical needs for inmates with spinal cord injuries and other serious acute medical issues; and/or

     h.     Failed to prevent the overcrowding of the [MCMJ]; and/or

     i.     Failed to provide for appropriate renovations or increase the size of the [MCMJ] despite many years of excessive and unsafe inmate population levels; and/or

     j.     Failed to provide funding for an adequate number of inmate patient beds in the MCMJ medical clinic; and/or

     k.     Failed to provide training and/or the funding for such training for [COs] with respect to the use of restraints and use of force; and/or

     l.     Failed to provide funding to ensure access to inmates housing in the 1005 Suicide Unit for medical and mental health personnel working within the MCMJ; and/or

     m.     Failed to properly update MCMJ polic[i]es and/or procedures, including, but not limited to the MCMJ policy for the USE of Force and Use of Restraints on inmates; and/or

     n.     Failed to mandate or require a clear policy or procedures requiring inmates receive medical care after being subject to use of force or being tased[;]

     o.     Allowed for MCMJ [COs] to assess whether an inmate is malingering prior to contacting medical personnel.

(Doc. 134, ¶¶ 231, 239-41, & 244-45).

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662,

678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [*Twombly*, 550 U.S.] at 570, 127 S. Ct. [at] 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556, 127 S. Ct. [at] 1955."). Since a Rule 12(b)(6) motion questions the legal sufficiency of a complaint, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 1276, 113 L. Ed. 2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990); *but see also Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. [at] 1955."). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 1382, 103 L. Ed. 2d 628 (1989). Obviously, therefore, a district court may not resolve factual disputes when adjudicating a motion to dismiss. *Page v. Postmaster Gen. and Chief Exec. Officer of the U.S. Postal Serv.,* 493 F. App'x 994, 995 (11th Cir. 2012) (citing, among other cases, *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990) (indicating that, under Rule 12(b)(6), the existence of disputed material facts precludes a

16

district court from granting a motion to dismiss)).  "'When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto.'"  *Thaeter v. Palm Beach Cty. Sheriff's Office,* 449 F.3d 1342, 1352 (11th Cir. 2006), quoting *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211, 1215-16 (11th Cir. 2012) ("Because the Ellis law firm's dunning letter and enclosed documents were attached to the Reeses' complaint as an exhibit, we treat them as part of the complaint for Rule 12(b)(6) purposes.").  Finally, "[a] district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."  *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002).

## I.  DEFENDANTS COCHRAN'S AND OLIVER'S MOTION TO DISMISS

Defendants Cochran and Oliver argue in their motion to dismiss that Plaintiff Smith's claims are due to be dismissed because they are protected by qualified immunity.  (Doc. 139, at 3).

The defense of qualified immunity can be raised and considered on a motion to dismiss.  *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).  "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable personal would have known.'"  *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003)

(quoting *Hope v. Pelzer*, 536 U.S. 730, 122 S Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002)). "Qualified immunity ' protect[s] from suit "all but the plainly incompetent or one who is knowingly violating the federal law."'" *Dalrymple*, 334 F.3d at 994 (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)). "Questions of qualified immunity should be resolved at the earliest possible stage in the litigation." *Dalrymple*, 334 F.3d at 994 (citing *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991) (per curiam)). "A district court should therefore grant the defense of qualified immunity on a motion to dismiss if the complaint 'fails to allege the violation of a clearly established constitutional right.'" *Dalrymple*, 334 F.3d at 994-95 (quoting *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)).

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Carollo v. Boria*, 833 F.3d 1322, 1328 (11th Cir. 2016) (citations and internal quotation marks omitted). In this case, it is clear-and undisputed-Defendants Cochran and Oliver were acting within their discretionary authority at all relevant times described in the fourth amended complaint.

"If, interpreting the evidence in the light most favorable to the plaintiff, the court concludes that the defendant was engaged in a discretionary function, then the burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity." *Harland*, 370 F.3d at 1264 (emphasis retained) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) ("Once a defendant establishes that

he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity.")).  "To meet this burden, a plaintiff must establish that (1) his complaint pleads a plausible claim that the defendant violated his federal rights (the 'merits' prong), and that (2) precedent in this Circuit at the time of the alleged violation 'clearly established' those rights (the 'immunity' prong)."  *Carollo*, 833 F.3d at 1328 (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled in part by Person v. Callahan*, 555 U.S. 223, 234-35, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009), and *Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015)).  A court is "free to address the merits or the immunity prong of the qualified immunity analysis in any order."  *Carollo*, 833 F.3d at 1328 (citing *Person*, 555 U.S. at 236, 129 S. Ct. 808).

The Court will begin its analysis with the merits prong and determine if Plaintiff Smith's complaint alleges a violation of the Fourteenth Amendment.  *See Scott v. Miami Dade County*, 657 F. App'x 877, 881 (11th Cir. 2016) ("Our first task is to determine whether the facts alleged in Plaintiff's second amended complaint make out a violation of the Fourteenth Amendment.").  For purposes of this opinion, it is assumed, without deciding, the alleged conduct by the MCMJ COs toward Jeffries violated his Fourteenth Amendment rights, which leaves the Court to determine whether Defendants Cochran's and Oliver's supervisory actions caused the alleged constitutional violations by the MCMJ COs on the scene.  *See Dalrymple*, 334 F.3d at 995 ("Therefore, for purposes of this opinion, we will

19

assume, without deciding, that the alleged conduct by the agents on the scene violated the plaintiffs' First and Fourth Amendment rights. This leaves us with the task of deciding whether Reno's supervisory actions caused the alleged constitutional violations by the agents on the scene." (internal citations omitted)).

"A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Fourteenth Amendment." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013). "Whether a risk of harm is substantial is an objective inquiry." *Keith v. DeKalb County*, 749 F.3d 1034, 1047 (11th Cir. 2014) (citing *Marsh v. Butler County*, 268 F.3d 1014, 1028-29 (11th Cir. 2001) (en banc)). "Deliberate indifference requires the following: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.'" *Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013) (quoting *Goodman*, 718 F.3d at 1331-32). "'[O]nce it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner.'" *Keith*, 749 F.3d at 1047 (alteration in original) (citing *Marsh*, 268 F.3d at 1029).

However,

"[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); *Gonzalez* [*v. Reno*], 325 F.3d [1228, 1234 (11th Cir. 2003)] (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability). Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising

20

official and the alleged constitutional deprivation. *Gonzalez*, 325 F.3d at [1234]; *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Gonzalez*, 325 F.3d at [1234] (quoting *Braddy v. Fla. Dept. of Labor & Emp*[*t*], 133 F.3d 797, 802 (11th Cir. 1998)); *Brown*, 906 F.2d at 671. Alternatively, the causal connection may be established when a supervisor's "'custom or policy . . . result[s] in deliberate indifference to constitutional rights'" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez*, 325 F.3d at [1234-35] (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)); *Hartley* [*v. Parnell*], 193 F.3d [1263, 1263 (11th Cir. 1999)]; *see also Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1560-61 (11th Cir. 1993). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez*, 325 F.3d at [1264] (internal quotation marks and citation omitted).

*Cottone v. Jenne*, 326 F.3d 1352, 1360-61 (11th Cir. 2003).[4] "'The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)).

### a.  Count XI – Deliberate Indifference to Serious Medical Needs

---

[4] "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). "A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law." *Goebert*, 510 F.3d at 1332 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 926, 99 L. Ed. 2d 107 (1988)). "Demonstrating a policy or custom requires 'show[ing] a persistent and wide-spread practice.'" *Goebert*, 510 F.3d 1312 at 1332 (quoting *Depew v. City of St. Mary's, Georgia*, 787 F.2d 1496, 1499 (11th Cir. 1986)).

Count XI of Plaintiff Smith's complaint is a claim of deliberate indifference to serious medical needs.[5]  (Doc. 134, ¶¶ 229-32).  Plaintiff Smith claims Defendants Cochran and Oliver were responsible for development and implementation of policies and procedures at the MCMJ including policies and procedures for medical care, established unconstitutional customs and policies at the MCMJ, and thereby deprived Jeffries of his rights as a pretrial detainee.  (Doc. 134, ¶ 230).  Additionally, Plaintiff Smith claims Defendants Cochran and Oliver are liable for the acts of Defendant Naphcare and its policymakers.  (Doc. 134, ¶¶ 231-32).

Plaintiff Smith alleges there is a causal connection between the actions of Defendants Cochran and Oliver, and Jeffries's injury, based on Defendants' custom or policy that deprived Jeffries of his constitutional rights and a failure to correct a widespread pattern of constitutional violations.  As to a custom or policy of Defendants Cochran and Oliver, Plaintiff Smith alleges it was Defendants' custom or policy for COs to "determine, on their own, whether an inmate was malingering prior to reporting an inmate's complaints to medical personnel,"[6] which Defendants "condoned and accepted," (Doc. 134, ¶ 163), and Defendants "[f]ail[ed] to train

---

[5] In order to prove deliberate indifference to serious medical needs, a pretrial detainee must show (1) a serious medical need, (2) the prison official acted with deliberate indifference to the serious medical need, and (3) the injury was caused by the defendant's wrongful conduct.  *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007).

[6] Plaintiff Smith alleges Defendant Naphcare trained MCMJ COs to "use their own judgment or opinion when determining whether an MCMJ inmate was entitled to medical treatment after reporting a serious medical injury to a [CO]."  (Doc. 134, ¶ 163).  Specifically, "[t]he [COs] were allowed to determine, on their own, whether an inmate was malingering prior to reporting an inmate's complaints to medical personnel."  (Doc. 134, ¶ 163).

[MCMJ COs] with respect to the necessary reactions or recognition of spinal cord injuries and/or paralysis suffered by inmates," (Doc. 134, ¶ 236(o)), which Plaintiff Smith contends the "likelihood for constitutional violations is so high with respect to the recognition of serious inmate spinal cord injuries by [COs,] the need for training would be obvious," (Doc. 149, at 18).[7]

Plaintiff Smith's allegations of a causal connection, based on a policy, between Defendants Cochran's and Oliver's supervisory actions and the alleged constitutional violations by the MCMJ COs are vague and conclusory. Plaintiff Smith does not allege how Jeffries' injury was caused by the policy to which he cites. In fact, Plaintiff Smith does not allege the MCMJ COs determined Jeffries was malingering and alleges multiple officers reported to Naphcare staff ailments described by Jeffries.

---

[7] Plaintiff Smith argues that deliberate indifference "may be proven without evidence of prior incidents, if the likelihood for constitutional violations is so high that the need for training would be obvious." (Doc. 149, at 23) (citing *Lewis v. City of West Palm Beach,* 561 F.3d 1288, 1293 (11th Cir. 2009)). The Eleventh Circuit Court of Appeals in *Lewis* acknowledged "the Supreme Court referenced the proper use of firearms and the correct use of deadly force as an area that would be so obvious as to require adequate training by the municipality to avoid liability." *Lewis,* 561 F.3d at 1293 (citing *Harris,* 489 U.S. at 390 n. 10). The Eleventh Circuit opinion in *Lewis* went on to acknowledge instances in which it refused to expand the doctrine. *Lewis,* 561 F.3d at 1293 ("[T]his Court refused to acknowledge the proper response to handcuff complaints as so obvious as to put the municipality on notice that training is required. *Gold,* 151 F.3d at 1352. Similarly, the application of a hobble does not rise to the level of obviousness reserved for 'a narrow range of circumstances [where] a violation of federal rights may be a highly predictable consequence' of a failure to provide adequate training. *Bd. of* [*Cty.*] *Comm'rs of Bryan* [*Cty.*], *Okla. v. Brown,* 520 U.S. 397, 409, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)."). Similarly, this Court declines to expand the doctrine since the acts alleged by Plaintiff Smith "do not have the same potential flagrant risk of constitutional violations as the use of deadly firearms." *Lewis,* 561 F.3d at 1293.

As to causal connection based on a history of widespread abuse, in Plaintiff Smith's brief, he cites to MCMJ claims of misconduct made between 2007 and 2009, during Defendant Cochran's tenure as Sheriff, including complaints of excessive use of force, a complaint for denial of medical treatment, and two inmate suicides. (Doc. 134, ¶ 191). Plaintiff Smith, also, cites to an August 2015 audit of the MCMJ, (Doc. 134, ¶¶ 192-93); a March 2012 lawsuit against the MCMJ COs and the MCMJ's prior medical provider for deliberate indifference to medical needs, (Doc. 134, ¶ 169); and the Findings Letter, (Doc. 134, ¶ 39; Doc. 134-1, at 1-38).

However, these instances and materials are not sufficiently analogous to place Defendants Cochran and Oliver notice the custom or policy resulted in a flagrant, persistent pattern of violations that required correction. In fact, the instances and materials cited by Plaintiff Smith do not mention the custom or policy with which he takes issue

Plaintiff Smith has failed to allege a constitutional violation by Defendants Cochran and Oliver because he has failed to allege facts that would establish a causal connection between Defendants Cochran's and Oliver's supervisory actions and the alleged constitutional violations by the MCMJ COs. Defendant's Cochran and Oliver, therefore, are entitled to qualified immunity as to Plaintiff Smith's claim of deliberate indifference to serious medical needs. Therefore, the Court recommends that the motion to dismiss be granted as to Plaintiff Smith's claim against Defendants Cochran and Oliver that they exhibited deliberate indifference to his serious medical needs.

### b.  Count XII – Deliberate Indifference

Count XII of Plaintiff Smith's complaint is a claim of deliberate indifference.[8] (Doc. 134, ¶¶ 233-37).  Plaintiff Smith alleges Defendants Cochran and Oliver failed to implement proper policies, procedures, and practices in regard to the use of force; failed to properly train MCMJ COs in regard to the appropriate use of force; failed to provide and/or maintain proper video surveillance within the MCMJ; failed to properly staff the MCMJ; failed to provide adequate training to COs in regard to the use of restraints; failed to alleviate the overcrowding of the jail; failed to properly update MCMJ policies and/or procedures in regard to use of force and use of restraints; failed to implement clear MCMJ policy or procedure to require inmates to receive medical care after a use of force event; failed to implement clear MCMJ policy or procedure to require inmates to receive medical care after an inmate is Tasered; allowed COs to determine whether an inmate is malingering prior to contacting medical personnel; allowed for the buddy system to continue; failed to take all action recommended by the DOJ to prevent or deter instances of excessive use of force; promoted the unlawful use of excessive force by correctional officers by ignoring written policy that required video recording of pre-planned use of force; allowed Tasers to be used knowing the data would not be tracked and imposed minimal discipline in cases of use of excess force; and failed to train COs in regard to the necessary reactions to, or recognition of, spinal cord injuries and/or paralysis suffered by inmates.  (Doc. 134, ¶ 236).

---

[8] "Deliberate indifference requires the following: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.'" *Franklin*, 738 F.3d at 1250 (quoting *Goodman*, 718 F.3d at 1331-32).

In Plaintiff Smith's brief, he bases his deliberate indifference claim on Defendants Cochran's and Oliver's failure to train MCMJ COs in regard to use of force, (Doc. 149, at 23-25), and their provision of a constitutionally deficient surveillance system, (Doc. 149, at 25-26).[9]

As to Plaintiff Smith's claim of deliberate indifference based on a failure to train, in order to show a causal connection based on a history of widespread abuse,[10] Plaintiff Smith cites to two suits brought against MCMJ COs as well as documents attached to his complaint. (Doc. 149, at 24). One of those suits was brought on behalf of an MCMJ inmate against MCMJ COs and the MCMJ's medical provider, at the time, for deliberate indifference to serious medical need, excessive use of force, negligence, wantonness, assault, medical negligence, and medical

---

[9] "[A] supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [CO's] come into contact.'" *Keith*, 749 F.3d at 1052 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 412 (1989)). "Thus, a plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights,' and that armed with that knowledge the supervisor chose to retain that training program." *Keith*, 749 F.3d at 1053 (quoting *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1360, 170 L. Ed. 2d 417 (2011). "To establish that a supervisor was on actual or constructive notice of the deficiency of training, '[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary.'" *Keith*, 749 F.3d at 1053 (quoting *Connick*, 563 U.S at 61, 131 S. Ct. at 1350); *cf. Roy v. Johnson*, 97. F. Supp. 2d 1102, 1112 (S.D. Ala. 2000) ("In order to state a § 1983 claim against a supervisor for failure to supervise, a plaintiff 'must present some evidence that the [defendant] knew of a need to train and/or supervise in a particular area and the defendant made a deliberate choice not to take any action[,]' that this failure to train and/or supervise constitutes a custom or policy, and that the failure to train and/or supervise was the moving force behind the deprivation of a constitutional right.").

[10] Plaintiff Smith argues deliberate indifference can be proven without evidence of prior incidents if the likelihood for constitutional violation is so high the need for training would be obvious. The Court previously addressed this argument *supra* note 7, at 22.

wantonness.  (Doc. 134, ¶ 169).  The other suit was brought by an MCMJ inmate against MCMJ COs for claims that included excessive use of force.  (Doc. 134, ¶ 170).  Further, Plaintiff Smith cites to the medical care audit of the MCMJ, (Doc. 134, ¶¶ 192-93); the Findings Letter, (Doc. 134, ¶ 39; Doc. 134-1, at 1-38); and correspondence between representatives of the MCMJ and the DOJ, (Doc. 134-1, at 44-86); the results of the August 2015 audit of the MCMJ, (Doc. 134-1, at 87-117); and a list of "Incident/Use of Force Forms," (Doc. 134-2, at 1-2).

After reviewing these instances and materials, it is apparent Plaintiff Smith has not alleged a particular omission in the MCMJ COs training program that caused Jeffries's constitutional violation.  Plaintiff Smith generally alleges the MCMJ COs' training in regard to use of force was deficient, but does not allege what part of the MCMJ COs use of force training, in particular, led to Jeffries' constitutional violation.  Further, Plaintiff Smith does not sufficiently allege a pattern of similar constitutional violations by the MCMJ COs involved in the physical altercation with Jeffries that would put Defendants Cochran and Oliver were on notice of a deficiency in their training.  Therefore, the Court recommends Defendants Cochran's and Oliver's motion to dismiss be granted as to Plaintiff Smith's claim of deliberate indifference based on a failure to train and that claim should be dismissed.

As to Plaintiff Smith's claim of deliberate indifference based on a constitutionally deficient video surveillance system, in order to show a causal connection based on a history of widespread abuse, Plaintiff Smith cites to the

DOJ's October 2012 letter, which notified the MCC of the DOJ's assessment of the conditions at the MCMJ from an inspection that occurred between January 17, 2012, and January 20, 2012. (Doc. 134-1, at 26). Plaintiff Smith alleges if Defendants Cochran and Oliver heeded the recommendations of the DOJ in regard to the use of video surveillance to deter planned use of force by MCMJ COs, the relevant events would have been recorded and the MCMJ COs would have been deterred from carrying out the act. (Doc. 134, ¶ 86).

The materials put forth by Plaintiff Smith discuss how use of force instances should be monitored to deter misconduct, which is akin to a policy at the MCMJ rather than a result of a deficiently funded or maintained video surveillance system. Plaintiff Smith alleges the rotating camera that surveilled the 405 Unit was not directed at the location of the use of force against Jeffries at the time of the occurrence, and there were not cameras in the 1005 Suicide Unit. However, neither Plaintiff Smith nor the DOJ in its recommendations letter cite to past instances of constitutional violations caused by the adequacy of the video surveillance system that would have put Defendant Cochran and Oliver on notice of the likelihood of constitutional violations. Therefore, the Court recommends Defendants Cochran's and Oliver's motion to dismiss be granted as to Plaintiff Smith's claim of deliberate indifference in regard to a deficient video surveillance system and that claim should be dismissed.

Accordingly, the undersigned concludes that Defendants Cochran and Oliver are entitled to qualified immunity, their motion to dismiss should be granted, and Plaintiff Smith's claims against them should be dismissed.

## II.  DEFENDANT MCC'S MOTION TO DISMISS AND MOTION TO STRIKE PUNITIVE DAMAGES

Defendant MCC argues, in its motion to dismiss, Plaintiff Smith's state law *respondeat superior* claim cannot be maintained against the MCC; Plaintiff Smith cannot assert a § 1983 cause of action based on a theory of *resondeat superior*; Plaintiff Smith has not identified a municipal policy or custom that caused the constitutional deprivation at issue; Plaintiff Smith has not stated a claim upon which relief may be granted as to his claim of negligent hiring, training, staffing, and or supervision pursuant to § 1983; Plaintiff Smith's claim against the MCC for inadequate video cameras at the MCMJ cannot be maintained; and Plaintiff Smith's claim for punitive damages should be stricken as a matter of law.  (Doc. 142, at 6-17).

### a.  Motion to Dismiss

### i.  Count XI – Deliberate Indifference to Serious Medical Needs

Count XI of Plaintiff Smith's complaint is a claim for deliberate indifference to serious medical needs.  (Doc. 134, ¶¶ 229-32).  Plaintiff Smith claims Defendant MCC is "liable for the acts [of Defendant Naphcare] and its policymakers, including [Defendants] Wilson and Crawford, as [Defendant MCC] . . . delegated [its] final decision making authority to them."  (Doc. 134, ¶ 231).  At a hearing on Defendant

MCC's motion to dismiss and motion to strike, counsel for Defendant MCC conceded Count XI of Plaintiff Smith's complaint should not be dismissed at this time, and it would not be prejudiced by a denial of Defendant's motion to dismiss as to Count XI. Therefore, the Court recommends denying Defendant's motion to dismiss as to Count XI.

### ii.  Count XIII – Deliberate Indifference

Count XIII of Plaintiff Smith's complaint is a claim for deliberate indifference. (Doc. 134, ¶¶ 238-42).  Plaintiff Smith claims Defendant MCC failed to provide proper training, staffing, implementation of appropriate training practices, implementation of proper policies and/or procedures, failing to properly maintain and install adequate video surveillance in the MCMJ, hiring and/or supervision of MCMJ COs and/or failing to properly fund and/or maintain the MCMJ. (Doc. 134, ¶ 239).   Additionally, Plaintiff Smith claims Defendant MCC failed to provide appropriate funding and resources to provide adequate staffing of the MCMJ; proper training of MCMJ COs; adequate MCMJ video surveillance; proper maintenance of MCMJ video surveillance equipment; proper supervision of COs; proper implementation of MCMJ policies and procedures; proper training for COs for recognition and reaction to inmate medical needs for inmates with spinal cord injuries and other serious acute medical issues; prevention and/or alleviation of the overcrowding of the MCMJ; adequate size or renovations of the MCMJ; adequate number of inmate patient beds in the MCMJ medical clinic; proper training of COS for the use of restraints and use of force; adequate access to inmates housed in the

1005 Suicide Unit for medical and mental health personnel working within the MCMJ; adequate funding for the MCMJ to adequately provide for the medical needs; mental health needs of inmates and for a safe environment for the inmates of the MCMJ; adequate and timely updating of MCMJ policies and/or procedures including the MCMJ procedure for the use of force and use of restraints on inmates; and adequate funding for the MCMJ to properly provide for the medical needs and concerns and for a safe environment for MCMJ inmates as well as failed to mandate or require a clear policy or procedures that required inmates to receive medical care after being subjected to use of force or being Tasered, allowed MCMJ COs to assess whether an inmate is malingering prior to contacting medical personnel when an inmate reports a medical concern to an MCMJ CO or other personnel, and refused to adequately fund medical care.  (Doc. 134, ¶ 241).

"Deliberate indifference requires the following: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.'"  *Franklin*, 738 F.3d at 1250 (quoting *Goodman*, 718 F.3d at 1331-32).  Additionally, "[i]n the case of a county defendant, the plaintiff must point to a policy that demonstrates the County's deliberate indifference."  *Cagle*, 334 F.3d at 987 (citing *Tittle*, 10 F.3d at 1540); *see also id.* at 986 ("To subject a county to liability under [§] 1983 the plaintiff must show that the constitutional violation occurred as a result of a county policy."  *Tittle v. Jefferson Cty. Comm'n*, 10 F.3d 1535, 1540 (11th Cir. 1994)); *Sewell v. Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) ("A municipality may be held liable under § 1983 if the plaintiff shows that a

'custom' or policy' of the municipality was the 'moving force' behind the constitutional deprivation." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-94, 98 S. Ct. 2018, 2035-38, 56 L. Ed. 2d 611 (1978)). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell*, 117 F.3d at 489 (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479-80 (11th Cir. 1991). "A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell,* 117 F.3d at 489 (citing *Monell*, 436 U.S. at 690-91, 98 S. Ct. at 2035-36).

In Plaintiff Smith's brief, he argues his deliberate indifference claim is based on Defendant MCC's failure to fulfill its statutory duty to fund and maintain the MCMJ, (Doc. 150, at 10-14), specifically its provision of an adequate video surveillance system, and its failure to train in regard to use of force, (Doc. 150, at 24-26).

As to Plaintiff Smith's deliberate indifference claim based on Defendant MCC's failure to fulfill its statutory duty to fund and maintain the MCMJ, "[a] local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.'" *Turquitt v Jefferson County*, *Ala.*, 137 F.3d 1285, 1287 (11th Cir. 1998) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80, 106 S. Ct. 1292, 1298, 89 L Ed. 2d 452 (1986)). "The duties of the counties with respect to the jails 'are limited to funding the operation of the jail and to providing facilities to house the jail.'"

32

*Turquitt*, 137 F.3d at 1289 (quoting *Stark v. Madison County*, 678 So. 2d 787, 787 (Ala. Civ. App. 1996)). "The county commission is charged with erecting and maintaining jails, and each county is required to maintain a jail of sufficient size and strength to secure the prisoners." *Turquitt*, 137 F.3d at 1289-90 (citing ALA. CODE §§ 11-14-10, 11-14-13 (1989)). "The duty to 'maintain a jail' under § 11-14-10 is merely the duty to keep the 'jail and all equipment therein in a state of repair and to preserve it from failure or decline.'" *Turquitt*, 137 F.3d at 1290 (quoting *Keeton v. Fayette County*, 558 So. 2d 884, 886 (Ala. 1989)). Defendant MCC can be held liable for failing to properly fund the operation of and maintain the MCMJ if it was deliberately indifferent to a substantial risk of serious harm to the inmates thereof. *Marsh*, 268 F.3d at 1027.

In order to show Defendant MCC's subjective knowledge of a risk of serious harm, Plaintiff Smith cites to the DOJ's October 2012 letter in which it addressed the deficient use of force monitoring by video at the MCMJ,[11] (Doc. 134-1, at 50); Defendant Cochran's July 2013 letter to the DOJ in which he disagreed with the DOJ's conclusion in regard to the deficient use of force monitoring by video at the

---

[11] The section states:

> Consistent video monitoring of instances when staff has had time to prepare for their use of force provides an important safeguard against misconduct. The practice not only provides managers with an effective way of identifying those who use for inappropriately, it serves as a prophylactic against misconduct. Despite the utility of video monitoring, we found that Jail staff often fails to videotape the use of force, even for planned cell extractions. Unless the Jail acts to address this deficiency, in combination with the Jail's other security-related deficiencies, the failure to appropriately video staff's use of force will inevitably lead to the unauthorized or excessive use of force as a tactic for handling disruptive inmates.

(Doc. 134-1, at 50).

MCMJ, (Doc. 134-1, at 79); the report of the August 2015 audit of the MCMJ, specifically, in regard to the auditor's observation the "surveillance system has a history of going down, making the monitoring of certain areas impossible" and "[j]ail staff stated that this happens on a regular basis," (Doc. 134-1, at 101); and Defendant Oliver's deposition statement, "Inadequate funding is prohibiting us from upgrading the (video) system to where we think it should be and would be more comfortable with it as far as providing the care, the custody and control of the inmates," (Doc. 134, ¶ 149).

The DOJ's October 2012 letter addresses the deficient use of force monitoring by video at the MCMJ that the DOJ found "failed to meet minimum constitutional standards." (Doc. 134-1, at 47 & 50). Specifically, the October 2012 letter discusses how use of force instances should be monitored to deter misconduct, which is akin to a policy at the MCMJ rather than a consequence of a deficiently funded or maintained video surveillance system. The Court notes Defendant MCC is not responsible for the daily operation of the MCMJ and is not responsible for how it is managed. *See Marsh*, 268 F.3d at 1027 ("Alabama counties have no responsibility for daily operation of county jails and no authority to dictate how jails are run, but the County is charged with erecting and maintaining jails. [*Turquitt*,] at 1289-90 [(footnote omitted)]."). Further, Defendant Cochran's July 2013 response letter to the DOJ does not relate to Defendant MCC's duty to fund and maintain the MCMJ. The remaining materials Plaintiff Smith cites, the audit report of an audit performed in August 2015, which occurred after the events complained of in this

case, and Defendant Oliver's deposition statement, demonstrate there were issues with the MCMJ video surveillance equipment, but Plaintiff Smith does not adequately allege, beyond conclusory allegations, how the deficiency of the video surveillance equipment was the cause of Jeffries's constitutional deprivation. Therefore, the Court recommends granting Defendant's motion to dismiss as to Count XIII based on Plaintiff's Smith claim for deliberate against Defendant MCC for its failure to fulfill its statutory duty and that count should be dismissed.

As to Plaintiff Smith's claims based on a failure to train in regard to use of force, "[m]unicipal policy or custom may include a failure to provide adequate training if the deficiency 'evidences a deliberate indifference to the rights of its inhabitants.'" *Lewis*, 561 F.3d at 1293 (quoting *Harris*, 489 U.S. at 385). "To establish a city's deliberate indifference, 'a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.'" *Lewis*, 561 F.3d at 1293 (quoting *Gold*, 151 F.3d at 1350). "If the [municipality] is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, it is considered to be deliberately indifferent." *Lewis*, 561 F.3d at 1293 (citing *Gold*, 151 F.3d at 1351).

In order to show Defendant MCC's subjective knowledge of a risk of serious harm,[12] Plaintiff Smith cites a March 2012 lawsuit against the MCMJ COs and the MCMJ's prior medical provider for deliberate indifference to medical needs, (Doc.

---

[12] Plaintiff Smith argues deliberate indifference can be proven without evidence of prior incidents if the likelihood for constitutional violation is so high the need for training would be obvious. The Court previously addressed this argument *supra* note 7, at 22.

134, ¶ 169); a January 2014 lawsuit against MCMJ CO for improper use of a Taser, (Doc. 134, ¶ 170); the Findings Letter, (Doc. 134, ¶ 39; Doc. 134-1, at 1-38); correspondence between representatives of the MCMJ and the DOJ, (Doc. 134-1, at 44-86); the results of the August 2015 audit of the MCMJ, (Doc. 134-1, at 87-117); and a list of "Incident/Use of Force Forms," (Doc. 134-2, at 1-2).    Additionally, Plaintiff Smith cites to the October 2012 letter from the DOJ to Defendant MCC in regard to its assessment of conditions at the MCMJ from a January 2012 inspection.    (Doc. 134-1, at 51).    In the October 2012, the DOJ stated in regard to "Inadequate Training for Security Staff" the "special needs units need to be staffed by individuals with more specialized skills, temperament, and experience;" "[s]taff supervising mental health units require additional training because they have to deal with some of the most seriously ill and behaviorally challenged inmates;" and "[t]he [MCMJ], however, does not ensure that these staff receive such specialized training."    (Doc. 134-1, at 51).    Finally, Plaintiff Smith alleges "the standard operating procedure applicable to MCMJ personnel has never been updated since Cochran took office in 2006" and "since [the] DOJ began its investigation in 2003." (Doc. 134, ¶¶ 69-70).

A thorough review of these instances and materials does not reveal a particular omission in the MCMJ COs training program in regard to use of force that caused Jeffries's constitutional violation.    Plaintiff Smith generally alleges the MCMJ COs training in regard to use of force was deficient, but does not allege what part of the MCMJ COs use of force training, in particular, led to Jeffries'

constitutional violation, which failure leaves the Court unable to discern whether a pattern of constitutional violations exists.    Therefore, the Court recommends Defendant MCC's motion to dismiss be granted as to Plaintiff Smith's claim of deliberate indifference in regard to a failure to train and that claim be dismissed.

### iii.  Count IX – Negligence and Wantonness

Count XIV of Plaintiff Smith's complaint is a claim for negligence and wantonness.  (Doc. 134, ¶¶ 243-47).  Plaintiff Smith alleges Defendant MCC failed to provide appropriate funding to adequately staff the MCMJ, failed to provide appropriate funding to ensure adequate training of MCMJ COs, failed to provide a proper MCMJ video surveillance system, failed to provide proper maintenance of the MCMJ video surveillance system, failed to provide appropriate funding for the appropriate supervision of COs, failed to provide appropriate funding to ensure the proper implementation of MCMJ policies and procedures, failed to provide training and/or the funding necessary for such training for COs for recognition and reaction to inmate medical needs for inmates with spinal cord injuries and other serious acute medical issues, failed to prevent the overcrowding of the MCMJ, failed to provide for appropriate renovations or increase the size of the MCMJ despite many years of excessive and unsafe inmate population levels, failed to provide funding for an adequate number of inmate patient beds in the MCMJ medical clinic, failed to provide training and/or the funding for such training for COs with respect to the use of restraints and use of force, failed to provide funding to ensure access to inmates housed in the 1005 Suicide Unit for medical and mental health personnel working

within the MCMJ; failed to properly update MCMJ policies and/or procedures, failed to mandate or require a clear policy or procedures requiring inmates receipt of medical care after being subjected to a use of force or being Tasered, and allowed MCMJ COs to assess whether an inmate is malingering prior to contacting medical personnel.  (Doc. 134, ¶ 245).

The Court interprets Count XIV to assert against Defendant MCC certain general theories of liability for the injuries suffered by Jefferies:  negligence based upon its breach of certain statutory duties and negligence in training and supervision.[13]  The latter claim has no merit because Defendant MCC is not responsible for training or supervision at the MCMJ.  *See Marsh*, 268 F.3d at 1027 ("Alabama counties have no responsibility for daily operation of county jails and no authority to dictate how jails are run . . . .  [*Turquitt*,] at 1289-90 [(footnote omitted)]").

Plaintiff Smith's remaining contention is Defendant MCC is liable for Jeffries's injuries due to its breach of its statutory duties.  From what the Court is able to discern, those duties include the duty to maintain[14] a jail because it failed to provide proper video surveillance equipment, and maintenance for the equipment,

---

[13] The Court notes Plaintiff Smith, in his response to Defendant MCC's motion to dismiss, fails to address Defendant MCC's arguments in regard to Count XIV.  (*See* Doc. 150).

[14] "The county commission is charged with erecting and maintaining jails, and each county is required to maintain a jail of sufficient size and strength to secure the prisoners." *Turquitt*, 137 F.3d at 1289-90 (citing ALA. CODE §§ 11-14-10, 11-14-13 (1989)).  "The duty to 'maintain a jail' under § 11-14-10 is merely the duty to keep the 'jail and all equipment therein in a state of repair and to preserve it from failure or decline.'" *Turquitt*, 137 F.3d at 1290 (quoting *Keeton*, 558 So. 2d at 886).

and failed to maintain a jail of sufficient size; and the duty to appropriate funds[15] to operate the MCMJ because it failed to fund staffing at the MCMJ, training of MCMJ COs, supervision of COs, implementation of MCMJ policies and procedures, inmate patient beds in the MCMJ medical clinic, and access to inmates housed in the 1005 Suicide Unit.

As to Plaintiff Smith's contention Defendant MCC failed to maintain the MCMJ, Plaintiff Smith fails to allege how the failure to provide proper video surveillance equipment, and maintenance for the equipment, caused, or contributed to the injuries to Jeffries. *See Lemley v. Wilson*, 178 So. 3d 834 (Ala. 2015) ("'To establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury.' *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992)"). Plaintiff Smith alleges is it is "doubtful" the MCMJ COs, who were involved in the physical altercation with Jeffries, would have carried out the act if Defendant MCC adhered to the DOJ's recommendation to record use of force instances. (Doc. 134, ¶ 86). However, as the Court has discussed, such operational issues are not the purview of Defendant MCC. *See Marsh*, 268 F.3d at 1027 ("Alabama counties have no responsibility for daily operation of county jails and no authority to dictate how jails are run, but the County is charged with erecting and maintaining jails. [*Turquitt*,] at 1289-90 [(footnote omitted)].").

---

[15] "The county commission must appropriate funds for the jail to cover the expense of necessities such as bedding, clothing, electricity, and sanitation." *Turquitt*, 137 F.3d at 1290 (citing ALA. CODE §§ 11-12-15(a)(1), 11-14-20). "The [county commission] also pays the salaries of the sheriff and jail personnel." *Turquitt*, 137 F.3d at 1290 (citing ALA. CODE §§ 11-12-15(a)(2), 36-22-16)

As to Plaintiff Smith's contention Defendant MCC failed to maintain a jail of sufficient size and failed to fulfill its duty to appropriate funds, Plaintiff Smith has not alleged any facts in his fourth amended complaint, beyond conclusory statements, to support his contention.

Therefore, the Court recommends Defendant MCC's motion to dismiss be granted as to Plaintiff Smith's claim against Defendant MCC of negligence and that claim be dismissed.

### b.  Motion to Strike

Defendant MCC motions the Court to strike Plaintiff's Smith's claim for punitive damages.  (Doc. 141).  "[I[t is well-settled that local government entities are immune from punitive damages in action brought pursuant 42 U.S.C. § 1983." *Shaw v. Coosa Cty. Comm'n*, 330 F. Supp. 2d 1285, 1287 (M.D. Ala. 2004) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981); *Harrelson v. Elmore County, Ala.*, 859 F. Supp. 1475, 1469 (M.D. Ala. 1994)).  "Similarly, Alabama law does not permit the award of punitive damages against a county."  *Shaw*, 330 F. Supp. 2d at 1288 (citing Ala. Code § 6-11-26 (1975)).  Therefore, the Court recommends Defendant MCC's motion to strike be granted and Plaintiff Smith's claim for punitive damages against Defendant MCC be stricken.

### CONCLUSION

Accordingly, it is **RECOMMENDED** that the Court:

1.      **GRANT** Defendants Cochran's and Oliver's motion to dismiss, (Doc. 138), and **DISMISS** Counts XI and XII of Plaintiff Smith's fourth amended complaint, (Doc. 134), that are brought against Defendants Cochran and Oliver;

2.      **GRANT IN PART AND DENY IN PART** Defendant MCC's motion to dismiss, (Doc. 141), and **DISMISS** Counts XIII and XIV of Plaintiff Smith's fourth amended complaint, (Doc. 134), and **DENY** Defendant MCC's motion to dismiss as to Plaintiff's Smith's claims of deliberate indifference to serious medical needs, found in Count XI of Plaintiff Smith's fourth amended complaint, (Doc. 134); and

3.      **GRANT** Defendant MCC's motion to strike, (Doc. 141), and **STRIKE** Plaintiff Smith's demand for punitive damages.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection,

however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the 15th day of August 2017.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**