# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

STEVEN C. SMITH, as Conservator       :
for B.J., a minor child,              :
                                      :
    Plaintiff,                      :
                                      :
vs.                                   :   CA No. 1:15-cv-00371-CG-C
                                      :
TRAVIS TURNER, *et al.*,              :
                                      :
    Defendants.                      :

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen. L.R. 72(a)(2)(S), on Defendant Dewanna Deloach's Motion to Dismiss Plaintiff's Fourth Amended Complaint ("motion to dismiss"), (Doc. 157), which was filed on July 12, 2017, and Defendant Thomas Wesley's Motion to Dismiss Plaintiff's Fourth Amended Complaint ("motion to dismiss"), (Doc. 178), which was filed on October 3, 2017. Upon consideration of the parties' pleadings, (Docs. 157, 164, 166, & 178), it is **RECOMMENDED** both motions to dismiss be granted.

## FACTUAL BACKGROUND

In March 2003, the United States Department of Justice (the "DOJ"), notified the Mobile County Sheriff's Office (the "MCSO") and Defendant MCC of its intent to investigate the Mobile County Metro Jail (the "MCMJ")

pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997, an investigation that continues to the present. (Doc. 134, ¶ 28-29). The DOJ notified the MCC, by a "Findings Letter," dated January 15, 2009, certain conditions at the MCMJ were constitutionally inadequate including medical care, specifically in regard to acute care, chronic care, infectious diseases, intake and initial assessment, general access to medical care, and staffing; mental health care, specifically in regard to intake and initial assessment, access to mental health care, assessment, diagnosis, and treatment, suicide prevention, policies and procedures, and staffing; use of restraints, specifically in regard to monitoring of restrained individuals and application of restraints; security, supervision, and protection from harm, specifically in regard to control of contraband, classification of inmates, supervision, and policies, procedures, training, and staffing; safety and sanitation, specifically in regard to insect and rodent infestation, physical plant, fire safety, and general sanitation and safety. (Doc. 134-1, at 1-38). A follow up to the Findings Letter, dated May 29, 2009, indicated the DOJ had not received a response to the Findings Letter and requested engagement. (Doc. 134-1, at 44-46).

A letter, dated October 18, 2012, notified the MCC of the DOJ's assessment of the conditions at the MCMJ from an inspection that occurred between January 17, 2012, and January 20, 2012. (Doc. 134, at 47-69). This letter addressed jail practices that remained constitutionally substandard

including protection from assaults, specifically in regard to deficient classification and housing assignments, overcrowding, and deficient use of force monitoring by video; mental health care, specifically in regard to improper use of restraints on inmates with mental illness, improper placement decisions for inmates with mental illness, absence of clear procedures for transitioning inmates with mental illness to less restrictive settings, inadequate training for security staff, excessive reliance on a "Buddy System", problems relating to supervision of suicidal inmates, failure to clearly define terms in policies relating to mental health care, and overcrowding; medical care, specifically in regard to improvements to the electronic medical record system and improvements to the quality assurance and internal management system. (Doc. 134-1, at 48-53). Enclosed with this letter was a proposed settlement agreement. (Doc. 134-1, at 55-69). A letter, dated July 15, 2013, from the MCC to the DOJ was an initial response by the MCC to the DOJ's October 18, 2012, letter. (Doc. 134-1, at 70-79).

On May 4, 2015, Brandon Jeffries, who, at the time, was eighteen-years-old and a minor,[1] lived at a residential home, was arrested and charged with assault in the third degree, a misdemeanor, and held at the MCMJ as a pre-trial detainee. (Doc. 134, ¶¶ 73-74). On June 11, 2015, a few minutes after 3:00 p.m., Jeffries was engaged in a physical altercation in the 405 Unit

---

[1] "Any person in [Alabama], at the arrival at the age of 19 years, shall be relieved of his or her disabilities of minority and thereafter have the same legal rights and abilities as persons over 21 years of age. No law of this state shall discriminate for or against any person between and including the ages of 19 and 21 years solely on the basis of age." ALA. CODE § 26-1-1.

3

of the MCMJ with Defendants Travis Turner, Joseph Bell, James Bonner, Kevin Nelson, Tony Davis, Jr., Bridgette Goode, Earnest Goode, Jr., Kieyun Washington, and Walter Anderson, during which Jeffries fell to the ground. (Doc. 134, ¶¶ 80 & 89). At a point in time during the physical altercation, Turner held Jeffries's head on Turner's abdomen while Jeffries's arms were held behind Jeffries's head, and, at another time, a Taser was used on Jeffries one or more times by Turner. (Doc. 134, ¶¶ 89-90).

Goode, the shift commander at the time of the physical altercation, reported the physical altercation with Jeffries to Christina Russo, the mental health director for Naphcare U.S., Inc.'s ("Naphcare"), MCMJ medical unit, and Sheila Caulton, a licensed nurse employed with Naphcare. (Doc. 134, ¶ 98). Naphcare, a private medical company, contracted to provide medical care and mental healthcare to inmates at the MCMJ. (Doc. 134, ¶ 49).

After the physical altercation, Jeffries was placed in restraints of his hands and legs by one or more of the COs, drug by multiple COs for approximately forty (40) yards, and then placed in a wheelchair. (Doc. 134, ¶ 95). Jeffries was pushed in the wheelchair to the 1005 Suicide Unit, his restraints were removed, he was placed on the Unit's floor, and then he was told by Turner to walk into his new cell, to which request Jeffries responded he was unable. (Doc. 134, ¶ 103). Turner, then, used a Taser on Jeffries, after which Jeffries was stripped naked and placed in a smock. (Doc. 134, ¶¶ 103 & 108). Jeffries was left on the floor of cell number 1023. (Doc. 134, ¶

4

108).  Jeffries reported to Joshua Wilson, a floor officer in the 1005 Suicide Unit, he could not feel his legs and his shoulders were burning.  (Doc. 134, ¶ 109).  Wilson reported Jeffries's complaints to Ira Kennington, the pod officer for the 1005 Suicide Unit, who twice attempted to call the medical clinic without a response.  (Doc. 134, ¶ 110).

At approximately 4:30 p.m. that day, Caulton entered the 1005 Suicide Unit to perform blood glucose checks.  (Doc. 134, ¶ 114).  When Caulton entered the 1005 Suicide Unit, Kennington reported to Caulton Jeffries could not feel his legs, and Wilson reported to Caulton the same information and Jeffries had burning in his shoulders.  (Doc. 134, ¶ 115).  After speaking with Kennington and Wilson, Caulton, accompanied by Wilson, visited Jeffries in cell 1023, where he remained on the floor.  (Doc. 134, ¶¶ 118 & 120).  After Caulton examined Jeffries, she noted, at 5:13:49 p.m. of that day, Jeffries had no history of trauma; she did indicate Jeffries suffered from a backache; no tingling of extremities; location-right shoulder, left shoulder; pain rating of five (5) out of ten (10); sharp pain; no back pain; no foot drop/weakness/numbness in leg; and no sign of distress.  (Doc. 134, ¶ 123).  Caulton recommended Jeffries be given ibuprofen, which he was not administered.  (Doc. 134, ¶¶ 125, 131, & 133).

Lester Pittman, a floor officer in the 1005 Suicide Unit, worked from 7:00 a.m. to 7:00 p.m. on June 11, 2015.  Georganna Blakes, an employee of Naphcare; Will Fernandez and Thomas Wesley, floor officers in the 1005

5

Suicide Unit; and Dewana Deloach, the pod officer in the 1005 Suicide Unit, worked the night shift from 7:00 p.m. on June 11, 2015, to 7:00 a.m. on June 12, 2015. (Doc. 134, ¶¶ 131-32). During Blakes's shift, she conducted two pill passes in the 1005 Suicide Unit; did not present the recommended ibuprofen to Jeffries; did not assess, evaluate, or treat Jeffries; and did not seek additional treatment for Jeffries. (Doc. 134, ¶¶ 133-34). Floor officers did not enter information about Jeffries, from fifteen-minute interval checks of the 1005 Suicide Unit, in the PIPE wallet data collector system. (Doc. 134, ¶ 136).

On June 12, 2015, at approximately 11:14 a.m. emergency medical personnel were summoned to the MCMJ, and Jeffries reported to them he could not feel or move his lower body. (Doc. 134, ¶¶ 142-143). Jeffries was, then, transported to a local hospital for emergency medical treatment, where he was diagnosed with paralysis with limited upper body movement. (Doc. 134, ¶ 144).

## PROCEDURAL BACKGROUND

On July 27, 2015, Plaintiff Steven C. Smith, as conservator for B.J., a minor child,[2] filed a complaint with this Court. (Doc. 1). Plaintiff Smith filed a First Amended Complaint, (Doc. 8), on August 20, 2015. The Court entered a Rule 16(b) Scheduling Order, (Doc. 16), on October 8, 2015, and set the deadline for the parties to amend their pleadings to March 1, 2016, the date on which Plaintiff Smith filed a Motion for Leave of Court to Amend

---

[2] Jeffries has since attained the age of majority. *Supra* note 1, at 4.

6

Complaint and Add Party Defendants ("first motion to amend"), (Doc. 40), requesting that he be able to file a seconded amended complaint to amend factual allegations and other matters and file a third amended complaint to add the MCC as a party defendant. Attached to the first motion to amend was Plaintiff Smith's second amended complaint, (Doc. 40-2), and third amended complaint, (Doc. 40-3). Plaintiff averred in his first motion to amend that he submitted a verified statement of claim to the MCC that initiated a ninety day process, required by Alabama law for Plaintiff to add the MCC as a party defendant, which had not ended as of the filing of the first motion to amend. (Doc. 40).

The Court granted in part, (Doc. 42), Plaintiff's first motion to amend, which allowed Plaintiff Smith to file his second amended complaint, (Doc. 43), and file a motion for leave to file a third amended complaint to add the MCC as a party defendant no later than June 9, 2016, (Doc. 42), after the ninety day statement of claim period. Plaintiff Smith filed his Motion for Leave of Court to Amend Complaint and Add Party Defendant ("second motion to amend"), (Doc. 67), on June 8, 2016. The third amended complaint attached to the second motion to amend, (Doc. 67-1), however, was appreciably different from the third amended complaint attached to the first motion to amend, (Doc. 40-3), and the Court denied Plaintiff Smith's second motion to amend with leave for Plaintiff Smith to file his third amended complaint, which was attached to his first motion to amend, (Doc. 73, at 5).

7

Plaintiff Smith's third amended complaint was entered on August 24, 2016, which added the MCC as a party defendant. (Doc. 74). Defendants Cochran and Oliver filed their Motion to Dismiss Plaintiff's Third Amended Complaint, (Doc. 79), and brief in support, (Doc. 78), on September 7, 2016, and on October 28, 2016, Defendant MCC filed its Motion to Dismiss Plaintiff's Third Amended Complaint and Motion to Strike Punitive Damages, (Doc. 88). On December 22, 2016, the Court entered a second Rule 16(b) Scheduling Order. (Doc. 101).

On March 21, 2017, Plaintiff Smith filed his Motion for Leave to Amend, (Doc. 127), which was unopposed, (*see* Docket Sheet), and was granted on March 30, 2017, (Doc. 131). Plaintiff Smith's Fourth Amended Complaint was entered on March 31, 2017. (Doc. 134).

In Plaintiff Smith's fourth amended complaint, he brings claims against Travis Turner, Kevin Nelson, Tony Davis, Jr., Bridgette Goode, Joseph Bell, Earnest Good, Jr., James Bonner, Kieyun Washington, Ira Kennington, Walter Anderson, Joshua Wilson, Melanie Thompson, Thomas Wesley, Dewanna Deloach, Will Fernandez, and Lester Pittman, who were MCMJ COs one or about June 11-12, 2015, in their individual capacities; Naphcare U.S., Inc., doing business as Naphcare, Inc. ("Naphcare"); Sheila Caulton and Georganna Blakes as agents and/or employee of Naphcare, in their individual capacities; David Crawford, as the Health Services Administrator for Naphcare, in his individual capacity; George Wilson, M.D.,

as the Medical Director for inmates at the MCMJ; the MCC; Sam Cochran, the Sheriff of Mobile County, Alabama, in his individual capacity; Noah Price "Trey" Oliver III, Warden of the MCMJ, in his individual capacity. (Doc. 134, ¶¶ 2-25).

As noted by the undersigned in its previously entered Report and Recommendation, (Doc. 170, at 9), Plaintiff Smith's fourth amended complaint is a quintessential "shotgun" pleading.[3]

As to Defendants Deloach and Wesley, Count VII incorporates the previous two hundred and thirteen (213) paragraphs of the fourth amended complaint, including all previous counts, and is brought against Defendants Nelson, Davis, Jr., Bonner, Bell, Washington, Kennington, Joshua Wilson, Anderson, Thompson, Bridgette Goode, Earnest Goode, Jr., Turner, Pittman, Fernandez, Deloach, and Wesley pursuant to 42 U.S.C. § 1983, and alleges they were deliberately indifferent to Jeffries's serious medical needs, in violation of his Fourteenth Amendment rights. (Doc. 134, ¶¶ 238-242). Specifically, Plaintiff Smith alleges:

---

[3] "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002); *see also Anderson v. Dist. Bd. of Trs. of Cent. Fl. Comty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) ("[Plaintiff's] complaint is a perfect example of 'shotgun' pleading in that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."). "Consequently, in ruling on the sufficiency of a claim, the trial court must sift out the irrelevancies, a tasks that can be quite onerous." *Strategic Income Fund, L.L.C.*, 305 F.3d at 1295 (footnoted omitted).

9

> 215. On or about June 11, 2015, defendants Nelson, Davis, Jr., Bonner, Bell, Washington, Kennington, Joshua Wilson, Anderson, Thompson, Bridgette Goode, Earnest Goode, Jr., Turner, Pittman, Fernandez, Deloach, and Wesley acting under color, custom and usage of state law within the meaning of 42 U.S.C. § 1983, failed to seek or provide [Jeffries] with immediate medical assistance after [Jeffries] became severely or seriously injured. The said defendants, therefore, did deprive [Jeffries] of his rights under the Fourteenth Amendment[ ] to the Constitution of the United States in violation of 42 U.S.C. § 1983. Specifically, the said defendants were deliberately indifferent to [Jeffries]'s constitutional right to be provided medical assistance while incarcerated upon becoming severely or seriously injured. As a result, [Jeffries] suffered serious or severe permanent and debilitating personal injuries or [Jeffries]'s serious or severe permanent and debilitating personal injuries suffered during the aforementioned incidents involving excessive force were exacerbated or made worse due to the said defendants' failure and/or delay in providing and/or seeking medical treatment for [Jeffries].

(Doc. 134, ¶ 215).

On April 14, 2017, Defendants Cochran and Oliver filed their Motion to Dismiss Plaintiff's Fourth Amended Complaint ("motion to dismiss"), (Doc. 138), and brief in support, (Doc. 139); and on April 17, 2017, Defendant MCC filed its Motion to Dismiss Plaintiff's Fourth Amended Complaint and Motion to Strike Punitive Damages (separately, "motion to dismiss" and "motion to strike"), (Doc. 141), and brief in support, (Doc. 142). The Court entered a submission order for Defendants Cochran's and Oliver's and Defendant MCC's motions, (Doc. 144), and the undersigned heard oral argument on those motions on May 25, 2017, (Doc. 154).

On July 12, 2017, Defendant Deloach filed her motion to dismiss, (Doc. 157), for which the Court entered a submission order, (Doc. 158). Plaintiff

Smith filed his Response in Opposition to Motion to Dismiss Filed by Defendant Dewanna Deloach, (Doc. 164), on July 28, 2017, and Defendant Deloach filed her Reply in Support of Motion to Dismiss Plaintiff's Fourth Amended Complaint, (Doc. 166), on August 4, 2017. On August 28, 2017, the Court entered its third Rule 16(b) Scheduling Order. (Doc. 174).

On August 15, 2017, the undersigned entered a Report and Recommendation as to Defendants Cochran's, Oliver's and MCC's motions, (Docs. 138 & 141), in which the undersigned recommended Defendants Cochran's and Oliver's motion to dismiss be granted and Counts XI and XII of Plaintiff Smith's fourth amended complaint be dismissed; Defendant MCC's motion to dismiss be granted in part and denied in part, Counts XIII and XIV of Plaintiff Smith's fourth amended complaint be dismissed, and Defendant MCC"s motion to dismiss Count XI of Plaintiff Smith's fourth amended complaint be denied; and Defendant MCC's motion to strike be granted and Plaintiff Smith's demand for punitive damages be struck. (Doc. 170, at 41).

On August 30, 2017, Plaintiff Smith filed his Objections to the Report and Recommendation of the Magistrate Judge ("objection to the Report and Recommendation"), (Doc. 176), to which the defendants did not file a response, (*see* Docket Sheet). The Report and Recommendation and objection to the Report and Recommendation were referred on August 31, 2017, to the district judge assigned to this matter. On December 7, 2017, the district

judge adopted the Report and Recommendation as the opinion of the Court. (Doc. 185).

On October 3, 2017, Defendant Wesley filed his motion to dismiss, (Doc. 178), for which the Court entered a submission order, (Doc. 179). Plaintiff Smith did not file a response to Defendant Wesley's motion to dismiss. (*See* Docket Sheet).

## **STANDARD OF REVIEW**

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, (hereinafter "FRCP" followed by the Rule number) a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [*Twombly*, 550 U.S.] at 570, 127 S. Ct. [at] 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556, 127 S. Ct. [at] 1955."). Since a FRCP 12(b)(6) motion questions the legal sufficiency of a complaint, in assessing the merits of a

FRCP 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 1276, 113 L. Ed. 2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990); *but see also Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. [at] 1955."). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 1382, 103 L. Ed. 2d 628 (1989). Obviously, therefore, a district court may not resolve factual disputes when adjudicating a motion to dismiss. *Page v. Postmaster Gen. and Chief Exec. Officer of the U.S. Postal Serv.,* 493 F. App'x 994, 995 (11th Cir. 2012) (citing, among other cases, *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990) (indicating that, under Rule 12(b)(6), the existence of disputed material facts precludes a district court from granting a motion to dismiss)). "'When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto.'" *Thaeter v. Palm Beach Cty. Sheriff's Office,* 449 F.3d 1342, 1352 (11th Cir. 2006), quoting *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211, 1215-16 (11th Cir.

2012) ("Because the Ellis law firm's dunning letter and enclosed documents were attached to the Reeses' complaint as an exhibit, we treat them as part of the complaint for Rule 12(b)(6) purposes."). Finally, "[a] district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002).

## I. DEFENDANT DELOACH'S MOTION TO DISMISS

Plaintiff Smith brings against Defendant Deloach a claim of deliberate indifference to serious medical needs in violation of Jeffries's Fourteenth Amendment rights, which is made actionable under 42 U.S.C. § 1983. (Doc. 134, ¶¶ 214-15). In Defendant Deloach's motion to dismiss, she argues Plaintiff Smith's claims are due to be dismissed because Plaintiff Smith has failed to state a claim upon which relief may be granted. (Doc. 157, at 1). Specifically, Defendant Deloach argues Plaintiff Smith "has done nothing more than add [Defendant] Deloach as a party-defendant and allege that she was an employee in the building on the night in question" and "[t]here are no specific facts alleged against [Defendant] Deloach." (Doc. 157, ¶ 6).

"Deliberate indifference requires the following: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.'" *Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013) (quoting *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32

14

(11th Cir. 2013). "To be deliberately indifferent a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference.*" *Goodman*, 718 F.3d at 1332.

Plaintiff Smith's claim against Defendant Deloach is based on his allegations that she was a MCMJ CO on or about June 11, 2015, and June 12, 2015, (Doc. 134, ¶ 21); on June 11, 2015, and June 12, 2015, she "worked as the pod officer in the 1005/Suicide Unit from 7:00 p.m. until 7:00 a.m.," (Doc. 134, ¶ 132); and she did not "[seek] and/or provide[ ] any additional medical treatment for [Jeffries]," on June 11, 2015, and June 12, 2015, (Doc. 134, ¶ 139). Plaintiff Smith does not allege additional facts about Defendant Deloach. While Plaintiff Smith may imply Defendant Deloach had subjective knowledge of Jeffries's injuries because she was assigned to the 1005 Suicide Unit when Jeffries was brought there, after his physical altercation with the MCMJ COs, Plaintiff Smith does not, in fact, allege such knowledge. Based on the fourth amended complaint, the undersigned finds Plaintiff Smith has not plead a claim of deliberate indifference against Defendant Deloach, and, therefore, the undersigned recommends Defendant Deloach's motion to dismiss be granted.

## II. <u>DEFENDANT WESLEY'S MOTION TO DISMISS</u>

Plaintiff Smith brings against Defendant Wesley a claim of deliberate indifference to serious medical needs in violation of Jeffries's Fourteenth Amendment rights, which is made actionable under 42 U.S.C. § 1983. (Doc. 134, ¶¶ 214-15). In Defendant Wesley's motion to dismiss, he argues Plaintiff Smith's claims are due to be dismissed because Plaintiff Smith has failed to state a claim upon which relief may be granted. (Doc. 157, at 1). Specifically, Defendant Wesley argues Plaintiff Smith "has done nothing more than add [Defendant] Wesley as a party-defendant and allege that he was an employee in the building on the night in question" and "[t]here are no specific facts alleged against [Defendant] Wesley." (Doc. 178, ¶ 6).

"Deliberate indifference requires the following: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.'" *Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013) (quoting *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013). "To be deliberately indifferent a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference.*" *Goodman*, 718 F.3d at 1332.

Plaintiff Smith's claim against Defendant Wesley is based on Plaintiff Smith's allegations that Defendant Wesley was a MCMJ CO on or about June 11, 2015, and June 12, 2015, (Doc. 134, ¶ 20); on June 11, 2015, and June 12,

16

2015, Defendant Wesley worked as a floor officer in the 1005 Suicide Unit from 7:00 p.m. until 7:00 a.m., (Doc. 134, ¶ 132); and Defendant Wesley failed to "seek or provide [Jeffries] with immediate medical assistance after [Jeffries] became severely or seriously injured," on June 11, 2015, and June 12, 2015, (Doc. 134, ¶ 139). Plaintiff Smith does not allege additional facts about Defendant Wesley. Similar to the Court's conclusion in regard to Defendant Deloach's motion to dismiss, while Plaintiff Smith may imply Defendant Wesley had subjective knowledge of Jeffries's injuries because he was assigned to the 1005 Suicide Unit as a floor officer when Jeffries was brought there, after his physical altercation with the MCMJ COs, Plaintiff Smith does not, in fact, allege such knowledge. Based on the fourth amended complaint, the undersigned finds Plaintiff Smith has not plead a claim of deliberate indifference against Defendant Wesley, and, therefore, the undersigned recommends Defendant Wesley's motion to dismiss be granted.

## CONCLUSION

Accordingly, it is **RECOMMENDED** that the Court **GRANT** Defendant Deloach's motion to dismiss, (Doc. 157), and **DISMISS WITHOUT PREJUDICE** Plaintiff Smith's claim against Defendant Deloach that is found in Count VII of Plaintiff Smith's fourth amended complaint, (Doc. 134). Likewise, it is also **RECOMMENDED** that the Court **GRANT** Defendant Wesley's motion to dismiss, (Doc. 178), and **DISMISS WITHOUT**

**PREJUDICE** Plaintiff Smith's claim against Defendant Wesley that is found in Count VII of Plaintiff Smith's fourth amended complaint, (Doc. 134).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the 29th day of December 2017.

        s/WILLIAM E. CASSADY
        **UNITED STATES MAGISTRATE JUDGE**